IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) Criminal No.    1:17-CR-00037 (MAD) |
| | ) |
| **v.** | ) **Plea Agreement** |
| | ) |
| **GEORGE MUZIO, JR.,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant **GEORGE MUZIO, JR.** (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1) **The Defendant's Obligations:**

   a) **Guilty Plea:** The defendant will change the defendant's previously entered plea of "not guilty" and plead guilty to Counts 1 through 9 of the Superseding Indictment in Case No. 1:17-CR-00037 (MAD) charging sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and (e); distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

   b) **Special Assessment:**   The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $900, payable to the U.S. District Court, at the time of sentencing.

c) **Additional Special Assessment:** In addition to the assessment imposed under § 3013, unless the court finds the defendant to be indigent, the defendant shall pay an additional assessment of $5,000, per count, pursuant to 18 U.S.C. § 3014(a). This assessment is payable only after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal convictions on which this assessment is based. 18 U.S.C. § 3014(b).

d) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

e) **Restitution:** The minors depicted in the images and/or videos involved in the defendant's criminal activity, along with any and all relevant conduct, are victims of his offenses, whether or not those minors are named in the Superseding Indictment or identified in the factual basis of the defendant's guilty plea. The defendant therefore consents to an order pursuant to 18 U.S.C. § 2259(b) directing him to pay restitution to those victims. The parties agree that restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States,* __U.S.__, 134. S.Ct. 1710, 1727 (2014).

2) **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the Superseding Indictment in Case

2

No. 1:17-CR-00037 (MAD) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

   b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3)     **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a) **Maximum term of imprisonment:** 30 years for Counts 1 and 2, pursuant to 18 U.S.C. § 2251(e); 20 years for Counts 3 through 8, pursuant to 18 U.S.C. § 2252A(b)(1); and 20 years for Count 9, pursuant to 18 U.S.C. § 2252A(b)(2).

   b) **Mandatory minimum term of imprisonment:** 15 years for Counts 1 and 2, pursuant to 18 U.S.C. § 2251(e); and 5 years for Counts 3 through 8, pursuant to 18 U.S.C. § 2252A(b)(1).

   c) **Maximum fine:** On each count, $250,000, pursuant to 18 U.S.C. § 3571(b)(3).

   d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 18 U.S.C. § 3583(k). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 5 years.

   e) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a

sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction. A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

f) **Other adverse consequences:**   Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4)    <u>**Elements of Offenses:**</u> The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

<u>**Counts 1 - 2**</u>

a) *First*, that the victim was under the age of eighteen;

b) *Second*, that the defendant persuaded the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and

4

c) *Third*, that the visual depiction was actually transported in interstate commerce, or was produced and transmitted using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

### Counts 3 - 8

a) *First*, that the defendant knowingly distributed a visual depiction;

b) *Second*, that the visual depiction was distributed in interstate commerce using a means or facility of interstate commerce, or in or affecting such commerce by any means, including by computer;

c) *Third*, that the visual depiction was child pornography; and

d) *Fourth*, that the defendant knew of the sexually explicit nature of the visual depiction and that the visual depiction was of an actual minor engaged in sexually explicit conduct.

### Count 9

a) *First*, that the defendant knowingly possessed material that contained a visual depiction of child pornography;

b) *Second*, that the visual depiction had been mailed or shipped or transported using a means and facility of interstate commerce, or in or affecting such commerce by any means including by computer, or was produced using materials that had been shipped or transported in and affecting such commerce by any means including by computer;

c) *Third*, that the defendant know of the sexually explicit nature of the visual depiction and the visual depiction was of an actual minor engaged in sexually explicit conduct; and

d) *Fourth*, that the image of child pornography involved in the offense depicted a prepubescent minor or a minor who had not yet attained 12 years of age.

5

5)   **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

a)   On March 7, 2015, from inside his home in Albany County, the defendant used a computer connected to the Internet and the Shareaza file-sharing network—which he knew was configured to allow others to receive files from him—to distribute a video file containing child pornography to an undercover investigator.  The video file, titled "KIDCAM !!! [female name redacted] !!! NICE LITTLE TITS !!! – [Stickam] 13Yo Env Cutiepie Smotri.avi," is 8 minutes and 39 seconds long.  It depicts an approximately 12- to 14-year-old girl sitting on an unmade bed and performing in front of a webcam.  At the beginning of the video, the child is fully clothed.  She bends over to display the thong underwear she is wearing beneath her pants, blows a kiss towards the camera, lifts her shirt to display her bare stomach and bra, and lifts her bra to display her bare chest.  Next, she takes off her bra and moves closer to the camera, providing a close-up view of her bare chest, and pulls down her pants to display her underwear.  She eventually removes her pants, turns around on her hands and knees, and displays her exposed buttocks to the camera.  She then pulls her underwear to the side and exposes her genitalia, pubic area, and anus to the camera in a lewd and lascivious manner.  The video ends with the child turning around to face the webcam and smiling into it.

b)   On June 18, 2015, from inside his home in Albany County, the defendant used a computer connected to the Internet and the Shareaza file-sharing network to distribute a video file containing child pornography to an undercover investigator.  The video file, titled "Stickam Webcam PT – [redacted female name], 12yo in Braces Shows Tits Killer Body.avi," is

approximately 3 minutes long. It depicts an approximately 12- to 14-year-old girl sitting in a chair. At the beginning of the video, an onscreen graphic shaped like an arrow points to the child and announces her age as "12 Years Old [sic]." The child lifts her shirt, thereby exposing her bare chest. She then stands up and repeatedly pulls down her shorts, exposing her naked pubic area to the camera in a lewd and lascivious manner. The child also massages her breasts and appears to masturbate by placing her hand inside the front of her shorts and using it to rub her genital area.

c) On July 12, 2015, from inside his home in Albany County, the defendant used a computer connected to the Internet and the Shareaza file-sharing network to distribute a video file containing child pornography to an undercover investigator. The video file, titled "P[re]t[een] h[ard]c[ore] I'm the only one sucking dad.avi," is 30 seconds long. It depicts an adult male subjecting an approximately 10- to 12-year-old girl to oral sex. In the video, the male holds the back of the child's head with his hand and repeatedly inserts his erect penis into her mouth while the child kneels on the ground in front of him.

d) On December 29, 2015, from inside his home in Albany County, the defendant used a computer connected to the Internet and the BitTorrent file-sharing network—which he knew was configured to allow others to receive files from him—to distribute a video file containing child pornography to an undercover investigator. The video file, titled "Webcam – 11yo Old Girl Masterbating [sic] On Cam, M&D Show 13yo Old Daughter – Part 2 – Vichatter Stickam P[re]t[een] h[ard]c[ore] P[re]t[een] s[oft]c[core] (selecionado).mpg," is approximately 2 minutes long. It depicts an approximately 10- to 12-year-old girl sitting naked in a chair and masturbating by rubbing her genitalia with her hands.

e) On January 6, 2016, from inside his home in Albany County, the defendant used a computer connected to the Internet and the BitTorrent file-sharing network to distribute a video file containing child pornography to an undercover investigator.  The video file, titled "!!! New P[re]t[een] h[ard]c[ore] – 11yo Evelyn 2010 – Part 2!!! – Pedofilia em Videira – Santa Catarina – Brasil – denunciem esse canalha.avi," is approximately 35 seconds long.  It depicts an approximately 10- to 12-year-old girl kneeling on the ground in front of an adult male and rubbing his exposed erect penis with her hands.

f) On January 19, 2016, from inside his home in Albany County, the defendant used a computer connected to the Internet and the BitTorrent file-sharing network to distribute a video file containing child pornography to an undercover investigator.  The video file, titled "(P[re]t[een] h[ard]c[ore] Kidcam Lolifuck) Daddy Seduced By His 14yo Daughter to Cum Insider Her Pussy On Cam (2015).avi," is approximately 35 seconds long.  It depicts an approximately 14-year-old girl inserting a cylindrical sex toy inside her vagina.

g) On May 3, 2016, investigators executed a search warrant at the defendant's house. Pursuant to the search warrant, they seized various pieces of electronic media, including an Acer laptop computer with serial number LXPY90207/05/0E/56200 and an Apple iPhone, Model A1533, with IMEI number 013880004249723, both of which were manufactured outside of the state of New York and both of which belonged to the defendant.

h) A forensic examination of the Acer laptop computer revealed, and the defendant admits, that the laptop contained approximately 400 video files depicting child pornography. These included the following:  (i) "-P[re]t[een] h[ard]c[ore] Ped Penetration Ass 12Yo (15).avi," a 2-minute and 22-second video that depicts an approximately 12- to 14-year-

old girl being subjected to oral sex by an adult male, in that the male inserts his erect penis into the child's mouth and ejaculates; and (ii) "(Children-sf-1man) P[re]t[een] h[ard]c[ore] – 10Yo Girl Brutally Raped In A Car By Old Fatso He Cums_She Cries!.mpg.avi [sic]," a 6-minute and 15-second video that depicts an adult male inserting his penis into the vagina of an approximately 10- to 12-year-old girl while the child whimpers and cries in pain.

i) An examination of the iPhone revealed, and the defendant admits, that from around August 2014 to May 2016, while in Albany County, the defendant used his iPhone and the Kik Messenger cellular phone application ("Kik Messenger") to communicate, by way of text message conversations, with thirteen different underage girls.  The girls lived in various locations across North America, and their ages ranged from 11 to 17 years old.  The majority were between 13 and 14 years old at the time that they were in communication with the defendant.  In his text-message communications with the various underage girls, the defendant claimed to be a teenage boy, despite having been born in July 1981, and repeatedly requested—and received—naked photographs from each of the thirteen girls.

j) Specifically, the defendant used his iPhone and Kik Messenger to communicate with Victim 1, who was born in July 2003, from August 2014 through March 2015.  During that time, the defendant and Victim 1 exchanged nearly 2,000 text messages, which were transmitted between the Northern District of New York and Montana, where Victim 1 resided.  Throughout their text-message conversation, the defendant claimed to be a 17-year-old boy named Junior, and repeatedly steered the text-message exchange toward graphic sexual conversation.  For example, on August 26, 2014, Victim 1 asked the defendant, via text message, "When do u go to [soccer] practice[?]"  The defendant responded, "In 15 minutes[,] which sucks cause it's co[-]ed practice and I have a hard on."

The defendant went on to tell Victim 1 that "[s]occer shorts and my dick being hard does not work." The defendant then asked Victim 1, "Do you like my dick?," and told her, "I want you to cum on it."

k) On September 22, 2014, while still posing as a teenage boy, the defendant instructed Victim 1 to take and send to his iPhone naked photographs of herself. Specifically, the defendant told Victim 1, by way of text message, "I want one [i.e., a photograph] of you in your pajamas. One of you topless full body and one of you just in your panties full body all with your face [sic]." After Victim 1 agreed to take the photographs, the defendant texted, "Start with your pajama picture." In response, Victim 1, using a cellular telephone and a full-length mirror, took and sent to the defendant's iPhone a photograph of herself standing in her bedroom wearing pajamas. The defendant then texted, "Can I have a pic [o]f you taking each thing off individually beautiful[?]"

l) Victim 1 then took and sent to the defendant's iPhone a photograph of herself standing in her bedroom wearing only pajama bottoms, and with her breasts exposed. The defendant responded by instructing Victim 1, "Do that one again[.] I can't see your face." In response, Victim 1 took and sent to the defendant's iPhone a photograph identical to the first but that depicted most, but not all, of her face. The defendant responded, "Better but the next one let me see all of your face baby."

m) Next, Victim 1 took and sent to the defendant's iPhone a photograph of herself standing in her bedroom wearing underwear and a tank top. Upon receiving the photograph, the defendant responded, "Just panties baby." Victim 1 responded, "Ugh[.] Fine[.]," and the defendant texted, "I promise once I cum no more pictures." Victim 1 then took and sent to

the defendant's iPhone a photograph of herself standing in her bedroom wearing only underwear, and with her breasts exposed.

n) The defendant then instructed, "Take off your panties[.]  I'm going to cum.  Hurry." Victim 1 then told the defendant, "No[,] those are what u asked for," to which the defendant responded, "I know[.]  Please baby[.]"  Victim 1 then told the defendant, "Last one," and the defendant responded, "Okay[.]  [M]ake sure all your face is in it," and "Make sure you're fully naked[.]"  Victim 1 responded, "I know."  She then took and sent to the defendant's iPhone a photograph of herself standing in her bedroom naked with her pubic area and genitalia exposed to the camera in a lewd and lascivious manner.  The defendant responded, "Want to see me cum?," and then sent Victim 1 a photograph of his erect penis.

o) The defendant also used his iPhone and Kik Messenger to communicate with Victim 2, who was born in April 2002, from October 2015 through January 2016.  During that time, the defendant and Victim 2 exchanged over 4,700 text messages between the Northern District of New York and Georgia, where Victim 2 resided.  Throughout their text-message communication, the defendant claimed to be a teenage boy named Junior and repeatedly steered the exchange toward graphic sexual conversation.  For example, early on October 20, 2015, Victim 2 and the defendant exchanged good-morning greetings, and Victim 2 apologized for not texting the defendant earlier.  Victim 2 then asked the defendant what he was doing, and the defendant responded, "Jerking off."  The defendant went on to ask Victim 2, "Want my dick inside you?  You know I'm going to fuck you really hard right?  You okay with that?"

p) On November 1, 2015, while still posing as a teenage boy, the defendant instructed Victim 2 to take and send to him naked photographs of herself.  Specifically, the defendant

told Victim 2, by way of text message, "I want to jerk off," and, "If you want to send some pics I wouldn't mind." Later, Victim 2 asked the defendant, "What do you want pics of[?]" The defendant responded, "Cross legged," and told Victim 2, "Stay naked for me." The defendant then used his iPhone to send Victim 2 a photograph of a penis, and told Victim 2, "Get it [i.e., his penis] hard baby." Victim 2 responded, "[Y]es daddy[.]  [S]ocks or no socks?" The defendant told her, "Start with socks." Using a cellular telephone, Victim 2 then took and sent to the defendant's iPhone a photograph of herself naked, with her pubic area and genitalia exposed in a lewd and lascivious manner.  The photograph depicts Victim 2 sitting on the ground cross-legged and wearing socks, just as the defendant instructed.

q)  After receiving the above-described photograph of Victim 2, the defendant responded, "Mmm," and told Victim 2, "Put your feet flat on the floor and take a pic." Victim 2 then took and sent to the defendant's iPhone a photograph of herself sitting on the floor naked with her feet flat on the floor in front of her and asked, "[L]ike that?"  The defendant responded, "Yes baby but spread your legs."  In response, Victim 2 took and sent to the defendant's iPhone a photograph of herself sitting on the floor naked with her legs spread, just as the defendant instructed, so that her genitalia and pubic area were exposed in a lewd and lascivious manner.  The defendant then told Victim 2, "I want to put my dick in you."

r)  Afterward, Victim 2 told the defendant that she needed to get dressed, and the defendant responded by asking her to "[d]o a pic topless standing up."  Victim 2 asked, "[J]ust topless[?]," and the defendant responded, "Completely naked if you aren't dressed ye[t]." In response, Victim 2 took and sent to the defendant's iPhone a photograph of herself standing in front of a bed naked with her pubic area and genitalia exposed to the camera in

a lewd and lascivious manner.  The defendant told her, "I want to bend you over your bed [a]nd fuck you so hard from behind."

s) Later, on November 2, 2015, the defendant suggested to Victim 2 that she use a hairbrush to masturbate, and told Victim 2 that he would "like to see it [i.e., the hairbrush] go in and out of [her]."  He went on to ask Victim 2 to make a video of herself masturbating with a hairbrush, and said, "[I]f you have to make 2 videos to get you cumming then do it.  Okay? ... At the end show me the brush going in and out of you."  When Victim 2 responded by telling the defendant that she was "a little nervous," the defendant told her, "Well don't be nervous cause if you are you won't cum," and went on to warn Victim 2 that "[i]t might hurt a bit at first [u]ntil you get wet."

6) **Sentencing Stipulations:**

a) The government will argue that Count 1 involves a minor who had not attained the age of twelve years, resulting in a 4-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.1(b)(1)(A).  The defendant reserves the right to argue otherwise.

b) The government will argue that Count 2 involves a minor who had attained the age of twelve years but not attained the age of sixteen years, resulting in a 2-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.1(b)(1)(B).

c) The government will argue that, for the purpose of producing sexually explicit material, Count 1 and Count 2 involve the knowing misrepresentation of the defendant's identity to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct; or the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a

minor in such conduct, resulting in a 2-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.1(b)(6). The defendant reserves the right to argue otherwise.

d) The government will argue that the defendant engaged in a pattern of activity involving prohibited sexual conduct, resulting in a 5-level increase to the applicable guidelines pursuant to U.S.S.G. § 4B1.5(b)(1). The defendant reserves the right to argue otherwise.

e) The government will argue that child pornography the defendant distributed and possessed involved a prepubescent minor or a minor who had not attained the age of 12 years, resulting in a 2-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.2(b)(2). The defendant reserves the right to argue otherwise.

f) The government will argue that child pornography the defendant distributed and possessed involved material that portrays sadistic or masochistic conduct or other depictions of violence, resulting in a 2-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.2(b)(4)(A). The defendant reserves the right to argue otherwise.

g) The government will argue that the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, resulting in a 5-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.2(b)(5). The defendant reserves the right to argue otherwise.

h) The government will argue that the distribution and possession offenses involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, resulting in a 2-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.2(b)(6). The defendant reserves the right to argue otherwise.

14

i)  The government will argue that the distribution and possession offenses involved 600 or more images, resulting in a 5-level increase to the applicable guidelines, pursuant to U.S.S.G. § 2G2.2(b)(7)(D).  The defendant reserves the right to argue otherwise.

j)  The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

k)  The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. §3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. §3E1.1(a).

7)  **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255,

to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a) The convictions resulting from the defendant's guilty plea;

b) Any claim that the statutes to which the defendant is pleading guilty is unconstitutional;

c) Any claim that the admitted conduct does not fall within the scope of the statute;

d) Any sentence to a term of imprisonment of 365 months or less;

e) Any sentence to a fine within the maximum permitted by law;

f) Any sentence to a term of supervised release within the maximum permitted by law;

g) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.   Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.  The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  The Court is neither a party to, nor bound by this Plea Agreement.  The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.  If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

    a. **Maximum terms of imprisonment:** The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

    b. **Mandatory minimum terms of imprisonment:** If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

c.  **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d.  **Sentencing guidelines:**

    i.  The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder.  While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

    ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court.  Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

    iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines.  If the presentence investigation reveals that the defendant's criminal history may support an offense level

19

different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the

Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g. **Government's Discretion to Recommend a Sentence:** Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more

21

supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

    c.  A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

a.  The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

b.  The defendant consents to the entry of an order of forfeiture of the assets described above.

c.  The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets

transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not

reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

**I.  Determination of Financial Condition and Payment of Interest and Penalties:**

    a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

    b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

    c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**J.  Remedies for Breach:**

    a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will

26

remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

i.   To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement.  The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

ii.  In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv.  To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

27

     v.  To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

     vi.  To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

     vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K.  **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant.  References to "the government" in this agreement refer only to that Office.  This agreement does not bind any other federal, state, or local prosecuting authorities.  Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L.  **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below.  No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

GRANT C. JAQUITH
United States Attorney

Joseph A. Giovannetti
Assistant United States Attorney
Bar Roll No. 520304

7/9/18
Date

GEORGE MUZIO, JR.
Defendant

7/9/18
Date

Lee C. Kindlon, Esq.
Attorney for Defendant
Bar Roll No. 511642

7/9/18
Date

29