UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES of AMERICA,**
                              **Plaintiff**                    **SENTENCING MEMORANDUM**

              **v.**

**GEORGE MUZIO**,                                              **1:17-CR-37-001 (MAD)**
                              **Defendant**

---

## BACKGROUND OF THE CASE

George Muzio was charged in the United States District Court for the Northern District of New York via a nine-count indictment on January 15, 2016 and, on July 9, 2018 he pled guilty to two counts of Sexual Exploitation of a Child under 18 USC §§ 2251(a), (e), six counts of Distribution of child pornography under 18 USC §§ 2252A(a)(2)(A), (b)(1), as well as one count of Possession of Child Pornography under 18 USC §§ 2252A(a)(5)(B) and (b)(2) and 2256(8)(A). There was a plea agreement.

This was a case of a father and husband who sunk too far into the dark recesses of his own mind and the internet.  As discussed below, the much-discredited child pornography Guideline results in the application of several enhancements which are common to almost all such cases. As a result, the Guidelines sentence is much higher than necessary, and a variance is strongly needed under the Parsimony Clause.  Additionally, as there are substantial mandatory minimum sentences required by the pleas, it is guaranteed that the defendant will face significant incarceration, and the imposition of a harsh guidelines beyond the mandatory minimum sentence is unnecessary and draconian.  It is submitted that under the circumstances, especially given the defendant's mental health issues, his strong community support and his performance while on supervised release, a sentence of a mandatory minimum jail time and probation would be reasonable.

**GUIDELINES SENTENCE**

Although the Sentencing Guidelines are no longer mandatory, the Court is required to consider them before imposing sentence. However, in *Gall v. United States*, 128 S. Ct. 586 (2007), the United States Supreme Court held that there is no presumption of reasonableness, and the court must consider the Guidelines, but also consider all the factors in 18 USC 3553(a) before imposing sentence.  In *United States v. Cavera*, 550 F.3d 180, 189, the Second Circuit stated:

> "It is now ... emphatically clear that the Guidelines are guidelines - that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors..."

According to the Presentence Investigation Report (PSR), the total offense level is 43. Given the Criminal History Category of I, this results in a guidelines range of life in prison.

**Child Pornography Guideline**

The Child Pornography Guideline (USSG 2G2.2) has come under attack in recent years because it is not empirically based, and more and more district judges - and Circuit Courts - are holding that it has little or no validity. The punishment model takes into account outdated methods of determining the actual dangerousness of a defendant.   A 2012 Sentencing Commission report to Congress concludes that "the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior. At the same time, it results in unduly lenient ranges for other offenders who engaged in aggravated collecting behaviors not currently addressed in the guideline, who were involved in child pornography communities, or who engaged in sexually dangerous behavior not qualifying for an enhancement in the current penalty scheme."   2012 USSC Report to Congress, Federal Child Pornography Sentences, pg. 321.

Very significantly, in 2010, the Second Circuit handed down *United States v. Dorvee*, 616 F.3d 174 (2ⁿᵈ Cir. 2010), reversing a within-guidelines sentence as substantively unreasonable and holding that the child pornography guidelines are problematic because they were not empirically derived, and could easily result in unreasonably harsh sentences. The *Dorvee* court stated:

> "...It is especially necessary to reach the matter of substantive unreasonableness now [the court had also found procedural unreasonableness] because we have found and identify here certain *serious flaws in USSG 2G2.2...*
>
> ***
>
> ...Dorvee ... is not alleged to have had any actual contact with children ... and admitted only to taking non-explicit photographs of children's feet. ... The irony ... is that the Guidelines actually punish some forms of direct sexual contact with minors *more leniently* than possession or distribution of child pornography.
>
> Similarly, the district court's cursory explanation of its deterrence rationale ignored the parsimony clause. ...
>
> ***
>
> These errors were compounded by the fact that the district court was working with a Guideline that is *fundamentally different than most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what 3553 requires.* Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. *However, the Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guideliens under 2G2.2 several times since 1987, each time recommending harsher penalties. See* United States Sentencing Commission, *The History of the Child Pornography Guidelines,* Oct. 2009, *available at* http://www.ussc.gov/general/20091030_History_Child_Pornography_Guidelines.pdf... Alan Vinegrad, the former United States Attorney for the Eastern District of New York, has noted that the recent changes effected by the PROTECT Act of 2003 evince a 'blatant disregard for the Commission and are 'the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress... Alan Vinegrad, <u>The New Federal Sentencing Law,</u> 15 Fed. <u>Sent. R. 310, 315 (June 2003)</u>...
>
> The Commission has often openly opposed these Congressionally directed changes. ...
>
> ...[M]any of the 2G2.2 enhancements apply in nearly all cases. Of all sentences under 2G2.2 in 2009, *94.8% involved an image of a prepubescent minor* (qualifying for a two-level increase), *97.2% involved a computer* (qualifying for a two-level increase...), *73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence* (qualifying for a four-level enhancement...)... and 63.1% involved 600 or more images...[FN9]
>
> FN9. *...96.6% of defendants received at least a two-level enhancement based on the number of images possessed.*

...[A]dherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain...
\*\*\*

     *District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under 2G2.2* - ones that can range from non-custodial sentences to the statutory maximum - *bearing in mind that they are dealing with an eccentric guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results. ...* We conclude that Dorvee's sentence was substantively unreasonable and, accordingly, must be revisited by the district court on remand."
*Dorvee*, at 182, 184-188, some emphasis supplied.

Subsequently, the Second Circuit likewise vacated and remanded child pornography cases for resentencing in *United States v. Tutty*, 612 F.3d 128 (2nd Cir. 2010) (remanded for consideration of *Dorvee*); *United States v. Shay* 2011 WL 1261577 (2nd Cir. 2011) (remanded for consideration of *Dorvee*) and *United States v. Cossey*, 632 F.3d 82 (2nd Cir. 2011) (remanded to different judge where court idiosyncratically rejected psychological reports showing low to moderate risk of recidivism). Significantly, in *Gordon v. United States*, 2011 WL 2638133 (SDNY 2011), the court very recently granted a 28 USC 2255 motion, holding that it previously committed plain error in not realizing that the child pornography guideline was not empirically based, and stating:

"I grant Petitioner's motion to vacate his sentence, based on my own error in assuming that more Sentencing Commission expertise underlay Section 2G2.2 than was the fact. That error resulted in my failure to credit a broad policy-based challenge to the child pornography Guidelines.
\*\*\*
Until 2009-2010, there was little examination of the extent to which the child pornography guidelines were a product of the Sentencing Commission's empirical study and expertise. In October, 2009, the Commission issued a fifty-four page report entitled, 'The History of the Child Pornography Guidelines'... The USSC Report highlighted the fact that increases in the Guidelines for child pornography from 1987 to 2009 were driven less by the Sentencing Commission's empirical study and expertise than by Congressional directives that lacked empirical justification.
In 2010 (after I sentenced Petitioner and after Petitioner's direct appeal was final), the Second Circuit, in *United States v. Dorvee*, relied upon the USSG Report in concluding that the child pornography Guidelines were 'fundamentally different' from most of the other Guidelines....
\*\*\*

As is now evidence from the USSC Report, and the Second Circuit's subsequent decision in *Dorvee*, the information upon which I relied in sentencing Petitioner was inaccurate. Petitioner was thereby deprived of his due process rights. My incorrect assumption at sentencing ... was thus a fundamental defect resulting in a miscarriage of justice."
*Gordon*, at 2-3

Other Circuits and many district courts have also expressed their disapproval of the harshness of the Child Pornography Guidelines. *United States v. Grober*, 624 F.3d 592 (3rd Cir. 2010); *United States v. Henderson*, 2011 WL 1613411 (9th Cir. 2011); *United States v. Stone*, 2009 WL 2385458 (1st Cir. 2009); *United States v. Manke*, 2010 WL 307937 (ED WI 2010); *United States v. Raby*, 2009 WL 5173964 (SD WV 2009); *United States v. Riley*, 655 F.Supp.2d 1298 (SD FL 2009); *United States v. Cruikshank*, 667 F. Supp.2d 697 (SD WV 2009); *United States v. McElheney*, 630 F. Supp.2d 886 (ED TN 2009); *United States v. Burns*, 2009 WL 3617448 (ND IL 2009); *United States v. Stern*, 590 F. Supp.2d 945 (ND OH 2008); *United States v. Symanski*, 2009 WL 1212252 (ND OH 2009); *United States v. Stabell*, 2009 WL 775100 (ED WI 2009); *United States v. Beirmann*, 599 F. Supp.2d 1087 (ND IA 2009); *United States v. Phinney*, 599 F.Supp.2d 1037 (ED WI 2009); *United States v. Grober*, 595 F.Supp.2d 382 (D NJ 2008); *United States v. Ontiveros*, 2008 WL 2937539 (ED WI 2008); *United States v. Doktor*, 2008 WL 5334121 (MD FL 2008); *United States v. Johnson*, 588 F. Supp.2d 997 (SD IA 2008); *United States v. Noxon*, 2008 WL 4758583 (D KS 2008); *United States v Grinbergs*, 2008 WL 4191145 (D NE 2008); *United States v. Hanson*, 561 F. Supp.2d 1004 (ED WI 2008); *United States v. Shipley*, 560 F. Supp.2d 739 (SD IA 2008); *United States v. Baird*, 580 F. Supp.2d 889 (D NB 2008).

The courts also noted that even in 2009, prior to *Dorvee*, district courts were imposing guidelines sentences in less than half of child pornography cases. In *Cruickshank*, supra, the court stated:

"Because of the inequities presented by 2G2.2, a number of courts have imposed below-Guidelines sentences, even in mine-run cases. *Between July 1, 2009 and*

*September 30, 2009, district courts imposed within-Guidelines sentences under 2G2.2 in only 44.6 % of the cases,* compared to the overall average of 55.2%. ...

\*\*\*

These pathetic men make easy targets. There is nothing redeeming or even understandable about this crime. But judges must objectively consider whether the sentences imposed further the goals of punishment. *To do so, we must differentiate between those who create child pornography and those who consume it.*

\*\*\*

Possessors of child pornography are modern-day untouchables. We cannot fathom how they can be aroused by images of prepubescent children being brutalized. ... Their prurient interests are so foreign that our citizens want them permanently removed from society. Many fear that those who view these images will also personally harm a child. And, wanting to punish *someone* for the crimes that these horrible images embody, society seeks harsh sentences for anyone who participates in this market. *Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers*. ..."

*Cruickshank*, at 701-703, emphasis supplied.

In *Symanski*, *supra*, the court pointed out that treatment professionals have stated that viewers of child pornography are often not at any heightened risk of physically abusing a child, and raised the concern of punishing someone for something they have not done, stating:

"Child pornography is one of the fastest growing areas of prosecution by the Justice Department. ... These cases become especially difficult at sentencing as judges often balance a defendant who has no previous criminal history ... against truly disgusting images...

A founder of the Johns Hopkins Sexual Disorder Clinic notes that many of his patients have a voyeuristic interest in child pornography, but beyond viewing *they are not at a heightened risk of physically abusing a child.* Some believe the tough sentences in child pornography are punishing a defendant for something they have not yet done - and likely may never do. Under the Guidelines, some of the recommended sentences for viewers can, with enhancements, be higher than those for actual predators.

Enhanced lengthy sentences for those convicted of child pornography come at a time when the federal prison population exceeds the system's capacity. ..." *Szymanski*, at 1, emphasis supplied.

This Court should follow the lead of *Dorvee* and the other cases cited above and grant a variance herein because, as in those cases, Mr. Muzio's offense level is substantially enhanced by factors which are common to nearly all of these types of cases.  He received enhancements for images of prepubescent children, use of a computer, sadistic/masochistic or violent images, and for the number of images.  It is respectfully submitted that the court again grant a variance and sentence George Muzio accordingly.

The defendant is facing significant mandatory minimums for the crimes to which he pled. On counts one and two, he faces at least fifteen years; on counts three through eight, he faces a mandatory minimum term of imprisonment of five years for each.  As the Court is searching for a punishment that is appropriate, it is respectfully submitted that the goals of sentencing would be satisfied with the defendant sentenced to terms mandatory minimum sentences run concurrently with one another.

## FACTORS UNDER 18 USC 3553(a)

Section 3553(a) directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to: (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in

the most effective manner; (3) the kinds of sentences available; (4) the sentencing range

established by the guidelines; (5) any pertinent policy statements issued by the Sentencing

Commission; (6) the need to avoid unwanted sentencing disparities among defendants with

similar records who have been found guilty of similar conduct; and (7) the need to provide

restitution to any victims of the offense.

Section 3553(a) also requires courts to "impose a sentence sufficient, *but not greater than*

*necessary*, to comply with the purposes set forth in paragraph 2." (Emphasis added).

**Nature and Circumstances of the Offense/ History and Characteristics of the Defendant**

Mr. Muzio is from a loving family.  His wife and his family have been supportive of him

throughout this case, and can provide a structure for him when he re-acclimates to the

community.   The defendant was initially charged in this case in early May 2016 and released

shortly thereafter.  Over the next ten months, Mr. Muzio lived at his aunt's house under the

watchful eye of both his family and the Probation Department.  During this time, Mr. Muzio

maintained a job, had contact with his family, there were no violations, and, over time, the Court

even allowed for expanded visitation opportunities with his children.  Given his strong

performance while on probation, utilizing both the structure of family and the community, there

has already been a preliminary showing that he can successfully thrive in a supervised release

setting.

If there is good that can come from this arrest and conviction, it is that Mr. Muzio may

have confronted some of the demons that drove him to this dark place.  A victim of sexual abuse

himself, had progressively worsening symptoms of depression and anxiety throughout his teens

and early twenties.  Only recently diagnosed as bipolar, he had begun medication and treatment

to address the mental health issues that are probably part of the root problem in this case.

Based on his lack of criminal history, his family and community support and the fact that Mr. Muzio has significant mental health problems detailed to this court and referenced below, it is submitted that Mr. Muzio's history and the circumstances herein support a sentence much lower than the Guideline range.  As discussed at length above, the Guidelines should be given very little weight herein, as this Guideline was never empirically derived, and was continually raised at the bequest of Congress with no valid basis.

**To Afford Adequate Deterrence to Criminal Conduct.**

It is submitted that given the lack of criminal history and the other factors discussed above, a sentence that includes mandatory minimum jail time and probation would be adequate to deter criminal conduct.

**To Protect the Public from Further Crimes of the Defendant.**

It is submitted that given all the circumstances discussed above, a sentence that includes mandatory minimum jail time and probation would be sufficient to protect the public from Mr. Muzio.

**To Provide the Defendant with Needed Educational or Vocational Training, Medical Care or other Correctional Treatment in the Most Effective Manner.**

Mr. Muzio, as discussed above, has significant mental health problems as detailed in the Pre-Sentence Report.  He suffers from mental health issues related to his traumatic past sexual abuse.  It is requested that the court take these factors into consideration, as it is submitted that this factor would support a significantly reduced sentence for the defendant.

**The Kinds of Sentences Available.**

*Booker*, *Gall* and *Kimbrough* show that almost any sentence is available, but the question is what sentence is *reasonable*. Based on the foregoing, it is submitted that a sentence of

mandatory minimum jail time and probation would be reasonable to meet the goals of punishment, rehabilitation and any necessary treatment.

**The Sentencing Range Established by the Guidelines.**

As discussed above, the guidelines range would be life in prison.

**Any Pertinent Policy Statements Issued by the Sentencing Commission.**

The Court should take into account that, as discussed above, the Sentencing Commission has made it clear that USSG 2G2.2 was *not* empirically derived, that Congress continually urged harsher sentences, and that the Commission has reviewed this Guideline and found it to be completely unrelated to the stated goals.

**The Need to Avoid Unwanted Sentencing Disparities Among Defendants with Similar Records Who have been Found Guilty of Similar Conduct.**

There are many disparities between people sentenced for child pornography offenses. However, it is becoming more and more recognized that the Guidelines range is significantly harsher than necessary and thus in violation of the parsimony clause. More and more courts have been granting huge downward variances in these types of cases while still arriving at substantial prison terms. Other courts have recently sentenced similar defendants to probation. See, i.e., *United States v. Birdsall*, 2:11-cr-134 (D NJ 2011) (5 years probation with 12 month location monitoring); *United States v. Saenz*, 7:05-cr-877 (SD TX 2011) (5 years probation).

**The Need to Provide Restitution to any Victims of the Offense**.

The victims have requested restitution but the defendant is financially unable to pay any restitution at this time. It is respectfully requested that, if the court order restitution, it be enforced as a judgment so that Mr. Muzio has an opportunity to pay in the future.

## CONCLUSION

Based on the foregoing, it is submitted that this Court should sentence George Muzio to the mandatory minimums, run concurrently, for a period of incarceration of fifteen years, as well as a period of probation supervision.

Dated: December 3, 2018.

Respectfully submitted,

THE KINDLON LAW FIRM, PLLC

By:  _Lee C. Kindlon_
Lee C. Kindlon
Bar Roll No. 511642
52 James Street
Albany, New York 12207
Telephone: (518) 434-1493
Fax: (518) 935-9336
Email:  LKindlon@Kindlon.com

cc:    US Attorney's office (via ECF)