1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF NEW YORK

3

4    **UNITED STATES OF AMERICA,**        )
                                          )
5                                         )    CASE NO.: **1:17-CR-37**
                                          )
6         VS.                             )
                                          )
7    **GEORGE MUZIO, JR.,**               )
                      Defendant.          )
8    _____   )

9

10                   **TRANSCRIPT OF PROCEEDINGS**
               **BEFORE THE HON. MAE A. D'AGOSTINO**
11              **THURSDAY, DECEMBER 20, 2018**
                    **ALBANY, NEW YORK**

12

13

14   **FOR THE GOVERNMENT:**
          Office of the United States Attorney
15        By:  Emmet J. O'Hanlon, AUSA
          445 Broadway, Room 218
16        Albany, New York  12207

17

18   **FOR THE DEFENDANT:**
          The Kindlon Law Firm, PLLC
19        By:  Lee C. Kindlon, Esq.
          52 James Street, 5th Floor
20        Albany, New York  12207

21

22

23

24            **THERESA J. CASAL, RPR, CRR, CSR**
               Federal Official Court Reporter
25               445 Broadway, Room 509
                 Albany, New York  12207

               *THERESA J. CASAL, RPR, CRR*
          *UNITED STATES DISTRICT COURT - NDNY*

*USA v. Muzio — 17-CR-37*

 1          (Court commenced at 12:33 PM.)

 2          THE CLERK:  Today is Thursday, December 20, 2018.

 3  The time is 12:34 PM.  The case is United States of America

 4  versus George Muzio, Jr., case number 17-CR-37.  We are here

 5  today for a sentencing.  May we have appearances for the

 6  record, please.

 7          MR. O'HANLON:  Assistant U.S. Attorney Emmet

 8  O'Hanlon for the Government.  Good afternoon, your Honor.

 9          THE COURT:  Good afternoon.

10          MR. KINDLON:  Lee Kindlon on behalf of Mr. Muzio,

11  who sits to my right.  Good afternoon, your Honor.

12          THE COURT:  Good afternoon to both of you.  Let me

13  ask:  Do both counsel have the final presentence report

14  dated November 3, 2018, and the addendum dated November 28,

15  2018?  Mr. O'Hanlon, do you have those?

16          MR. O'HANLON:  The Government does, your Honor.

17          MR. KINDLON:  We do as well, your Honor.

18          THE COURT:  All right.  And have you shared those

19  reports with Mr. Muzio?

20          MR. KINDLON:  Yes, your Honor, we've reviewed them

21  extensively.

22          THE COURT:  Thank you.  The record should reflect

23  that I have carefully reviewed both of those reports.  In

24  addition, the record should reflect that I have reviewed all

25  submissions by counsel, the 2018 edition of the Sentencing

*USA v. Muzio - 17-CR-37*

 1   Guidelines manual, and the factors outlined in 18, United

 2   States Code, Section 3553(a).  I have also reviewed the

 3   photographs that support Counts 1 and 2 of the superseding

 4   indictment.

 5          I find that the total offense level is 43, the

 6   criminal history category is I, and the guideline

 7   imprisonment range is life, or 6,000 months.  Counts 1 and 2

 8   each have 15-year statutory minimum sentences; Counts 3

 9   through 8 each have 5-year statutory minimums; and Count 9

10   has no statutory minimum.

11          Does the Government have any ongoing objections to

12   the facts, the offense level calculation or the criminal

13   history as set forth in the presentence investigation

14   report?

15          MR. O'HANLON:  No objection, your Honor.

16          THE COURT:  Does the defendant have any ongoing

17   objections to the facts, the offense level calculation or

18   the criminal history as set forth in the presentence report?

19          MR. KINDLON:  Other than what was written in our

20   sentencing memorandum, Judge, we have no other issues with

21   the calculation.

22          THE COURT:  All right.  And just so the record is

23   clear, essentially, what you were saying in your memo was

24   that the Guidelines were not calculated improperly, but you

25   find them to be excessively high under the case law that you

*USA v. Muzio — 17-CR-37*

 1  cited.

 2          MR. KINDLON:  That's correct, your Honor.

 3          THE COURT:  But not the computation itself.

 4          MR. KINDLON:  That's correct, your Honor.

 5          THE COURT:  All right.  Thank you.  Does the

 6  Government wish to say -- the record should also reflect

 7  before I get to anything that the attorneys want to say that

 8  I have also carefully reviewed letters from George Muzio,

 9  Jr., Jennifer Desmond, Cindy Muzio, Michael Cone, Julie

10  Cone, Crissy Cohn, Shannon Willett, Patricia Gaston, Carolyn

11  McCulloch, Mr. and Mrs. George Muzio, Sr., and a letter from

12  Mr. Muzio's children.

13          Does the Government wish to say anything before I

14  impose sentence?

15          MR. O'HANLON:  Yes, thank you, your Honor.  Your

16  Honor, as an initial matter, the sheer scope of defendant's

17  exploitation of vulnerable young girls via the internet

18  using his iPhone and several different social media

19  applications is overwhelming.  The damage inflicted on the

20  14 documented victims who the defendant manipulated, coerced

21  and enticed to take and send him naked and sexually explicit

22  pictures of themselves will impact them for the rest of

23  their lives.

24          Defendant acknowledged to Probation that he

25  utilized other instant messaging applications in addition to

*USA v. Muzio - 17-CR-37*

1  Kik to communicate with these minors and estimated that he

2  had contacted approximately well over 100 minors online and

3  that for at least 75 percent of those contacts, they were

4  sexual in nature.

5          The victims lived in various locations across

6  North America; one lived in Australia.  Their ages ranged

7  from 11 to 17 years old.  However, the majority were between

8  13 and 14 years old at the time that they were in

9  communication with the defendant.

10          In his text message communications with the

11  various underage girls, defendant claimed to be a teenage

12  boy named Junior and he repeatedly requested and received

13  naked photographs from each of the girls and videos from

14  some of them as well.

15          Of note, in an apparent attempt to obtain sympathy

16  from the minors to produce and send him pornographic images

17  of themselves, the defendant told many of the minors that he

18  was suffering from cancer and was undergoing surgery to

19  remove cancerous tumors.  Also, he utilized these false

20  assertions to induce minors to produce pornographic images

21  and videos of themselves.

22          Another factor in aggravation is the fact that the

23  defendant traded some of these images and videos that he

24  obtained from the victims with at least two other users that

25  the Government is aware of without the knowledge of the

1    victims.  The defendant and the other users also traded user

2    names of girls for whom they had obtained sexual images,

3    videos and gave each other suggestions for ways to approach

4    the girls online so the others could contact and proposition

5    the girls for additional images and videos.

6          The Government is particularly troubled by the

7    fact that while reviewing the electronic media seized from

8    the defendant's residence, investigators discovered 6 DVDs

9    that had hundreds of video clips of an adolescent female,

10   later identified as the minor daughter of defendant's

11   neighbors, who was determined to be between the ages of

12   14 and 16 when the videos were taken.  Videos were taken

13   from the second floor front and side windows of the

14   defendant's residence and depict the girl exiting her

15   residence, entering the families' vehicles, walking back to

16   her residence and are focused on her breasts and buttocks

17   areas.

18         Of the sentencing purposes set forth in Title 18,

19   U.S. Code, Section 3553(a), the Government submits the

20   purpose most relevant to the instant case is set forth in

21   subsection (2)(c), which explains the sentence needs to

22   protect the public from further crimes of the defendant.  In

23   this case, the defendant's charged conduct evinces his

24   abiding sexual interest in young female children, an

25   interest that was put into action by the defendant over the

*USA v. Muzio - 17-CR-37*

1  internet and in his own neighborhood and which resulted in a

2  pattern of activity which resulted in the sexual abuse of

3  approximately 75 minors by the defendant.

4           For these reasons, your Honor, the Government is

5  seeking a sentence of imprisonment that is within the

6  guidelines range and that takes into account the 15-year

7  mandatory minimum that applies in this case and that upon

8  release, the defendant be placed on supervised release for

9  the period of his life.  Thank you, your Honor.

10          THE COURT:  All right.  Thank you.  Mr. Kindlon,

11 do you wish to say anything before I impose sentence.

12          MR. KINDLON:  Yes, your Honor, thank you.  I've

13 represented George since May of 2016, which I think for him

14 has been a lifetime because where he has -- where he was and

15 where he is today, it's as if it's two different people.  I,

16 we, understand the gravity of the Government's charges,

17 certainly Mr. Muzio is stepping forward and accepting a plea

18 and taking a plea to all of the charges, he wanted to accept

19 responsibility and break from what was a very dark and awful

20 time in his life and some dark and, frankly, awful things

21 that he did to the victims.

22          But, Judge, amongst all this darkness, I've seen,

23 he's seen, his family has seen a real emergence, a glimmer

24 of hope.  George was out on supervised release from May of

25 2016 until earlier this year when he took a plea.  Over that

*USA v. Muzio - 17-CR-37*

1  time, we saw while he was on supervised release his

2  improvement, in terms of mental health, his stability, and

3  his family, his relationships with his wife, his children,

4  his parents, his aunt, everyone who has come here today to

5  support him.  And your Honor, I ask that the Court take

6  those things into account and that this is not a life at

7  37 years old that is worth incarcerating for the rest of his

8  life, but this is a life worth saving.  And I, in sentencing

9  submissions, did say and have argued that the guideline

10  range is excessive and that there should be a sentence that

11  should punish Mr. Muzio, that should find him treatment

12  within the Bureau of Prisons, but also give him an

13  opportunity to finally, you know, end this journey on his

14  own terms and give him the opportunity to emerge from

15  incarceration, be again with his family and be on probation,

16  yes, for the rest of his life, but certainly give him an

17  opportunity to live his life outside of the walls of the

18  Bureau of Prisons.

19          And so, therefore, your Honor, we would ask for a

20  period of incarceration, as I did in my memo, perhaps -- we

21  understand that there are mandatory minimums here, but

22  perhaps run a series of those concurrently with one another

23  so that he is given the opportunity to go home to his

24  family.  Thank you.

25          THE COURT:  Thank you.  Mr. Muzio, do you wish to

*USA v. Muzio - 17-CR-37*

1  say anything before I impose sentence?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Go ahead.

4          THE DEFENDANT:  I would like to apologize to the

5  courts and I would like to apologize to my victims and to

6  their families.  Everything that -- everything that I wanted

7  to say I had put in my letter that I had wrote to you.  I

8  was kinda nervous about speaking today, so I don't really

9  have a whole lot to say.  And I would like to apologize with

10  all my heart for the things that I've done and to who I have

11  affected negatively.

12          THE COURT:  All right.  Thank you, sir.  And I

13  will again state that I did carefully review the letter that

14  you sent in.

15          This afternoon, we're here today for a sentencing

16  that is taking place in open court, as it must, but I will

17  be discussing issues that, if given the choice, I would

18  prefer not to discuss in a public setting.  But I'm going to

19  discuss them in this public setting because the law requires

20  it and also because, Mr. Muzio, you have an absolute right

21  to know why I am sentencing you to the term that I am

22  sentencing you to, the public has the right to know, and

23  that will make the proceeding uncomfortable for many, but

24  also a reviewing court will need to know exactly why I am

25  sentencing Mr. Muzio the way that I am this afternoon.

*USA v. Muzio — 17-CR-37*

1      The topic of today's sentencing is very difficult,

2   many of the words that I will speak were the words of

3   Mr. Muzio, not me, and they will reflect the seriousness of

4   the crimes that Mr. Muzio was involved in.

5      I start with Counts 1 and 2, sexual exploitation

6   of children.  Make no mistake, this crime involves children.

7   Mr. Muzio, you pretended to be a teenage boy with these

8   children.  In some instances, you did tell these children

9   that you were suffering from cancer -- not these two

10  specifically, but many of the children that you communicated

11  with electronically -- and you really acted as a predator

12  with these children.

13      Victim 1 was born in 2003.  The period of time for

14  the crime with Victim 1 was 2014, making Victim 1 11 years

15  old.

16      Victim 2 was born in 2002.  The crime was

17  perpetrated in 2015, making Victim 2 approximately age 13 at

18  the time of the crime.

19      Pure and simple, these are children that we are

20  talking about.

21      I've read all of the text messages and

22  conversations that you had with these victims.  The record

23  should reflect that with respect to Victim 1, there were

24  over 2,000 text messages going on between you and that

25  child.  With respect to Victim 2, there were approximately

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT — NDNY*

1   4,700 messages between you and that child.  You preyed upon

2   these children in every possible way; first, by telling them

3   that you were a teenage male, and secondly, by constantly

4   demanding that they send you sexually explicit images.

5   Let's make no mistake, these are not undercover agents that

6   were being communicated with, these were not police

7   officers, these were female children.  You sucked these

8   teenagers into sending you vile, pornographic images in many

9   instances by telling them that you loved them.

10          With respect to Victim 1, some of the

11   conversations went like this:

12          Muzio, Oh, I love you baby girl.

13          Victim 1, I love you more.

14          Victim 1, Baby, I'm so sorry I fell asleep.

15          Muzio, It's okay, baby, I love you so much.  What

16   are you doing today?  And can you please send me your video?

17          Muzio, Strip down to your panties and tell me how

18   bad you want to suck my dick and suck a couple fingers.

19   Make sure I can see your face, baby girl.

20          Victim 1, I'm sorry, I will do it, just I don't

21   want to say how much I want to suck your dick 'cause I have

22   a brother in -- right next to me in my room.

23          Victim one, I can't 'til later.  I'm going to go

24   to the hospital.  Never mind.  Is nudes all you care about

25   from me?

*USA v. Muzio — 17-CR-37*

1          Muzio, No, it's not, but thanks for thinking that.

2          Victim 1, no, I'm sorry, baby, I just feel like

3      that's all we do when we talk.

4          Muzio, Well, do the video and I won't talk sexual

5      with you again.

6          Muzio, We are getting married when you get older.

7          I don't know what to say about that, other than

8      that it is vile and disgusting and you were, obviously,

9      taking a female child with no or little self-esteem at the

10     time and trying to draw her in to do these evil things

11     because you were telling her that you loved her and that you

12     wanted to marry her.  Unacceptable in every, every aspect of

13     life, what you did.

14         With respect to Victim 2, and I'm only, you

15     know -- as I said, there were over 2,000 of these

16     conversations, I'm reading from a very, very small portion

17     of them.  With respect to Victim 2, you begin conversations

18     by telling her, this child, that you're jerking off.  You

19     tell her that you're going to "F" her really hard and ask

20     her if that's okay.  You tell her to stay naked for you.

21     She then sends you a photograph of herself totally naked

22     with her pubic area and genitalia exposed.  You tell her to

23     put her feet flat on the floor, cross her legs, tell her

24     again that you want a photo of her completely naked and

25     then, as you do with many of your victims, you ask her to

1   put a hair brush into her genitalia area.  She says that she

2   doesn't want to do that and you tell her not to be nervous.

3          There's a common theme with respect to all of the

4   children that you dealt with.  Not only are you asking for

5   disgusting, pornographic images, but you are consistently

6   asking your victims to show you their faces, as well as

7   their genitalia, and you're constantly asking these children

8   to place items into their vaginal area.  And that's

9   consistent throughout.

10          The record also needs to reflect that your victims

11   came from all across the United States and all across the

12   world.  You had victims that you were communicating with

13   electronically in Montana, Georgia, California, Indiana,

14   Iowa, Kentucky, Louisiana, Massachusetts, New York, Oregon,

15   Texas, Australia, and Ottawa, Canada.

16          We are not talking about a few isolated

17   discussions with children.  That would be bad enough.  But

18   we're talking about thousands and thousands of conversations

19   with children all throughout the United States and

20   throughout the world.  You knew just how to prey on these

21   victims.  You knew just what to say when they would tell you

22   that they didn't want to do these things.  Any reviewing

23   court has to understand that you were a predator in every

24   sense of the word.  And sadly, your family has to understand

25   that and so does the community at large and so do the

*USA v. Muzio — 17-CR-37*

1    victims and the family members of the victims.

2              With respect to Counts 3, 4, 5, 6, 7 and 8 of the

3    superseding indictment, these counts involve distribution of

4    child pornography.  So, in addition to the many, many

5    victims that you communicated with and essentially forced

6    and compelled, by your words, these youngsters to send you

7    egregious pornographic images, you also collected on your

8    computer numerous child pornography images and you shared

9    them with others.

10             On March 17, 2015, you were on your computer

11   connected to the internet sharing a video of a 12- to

12   14-year-old, who was initially fully clothed, but then takes

13   off her bra, her pants, removes her underwear and exposes

14   her genitalia.

15             On June 18, 2015, on your computer, you shared a

16   file of a 12- to 14-year-old girl, sitting in a chair,

17   exposing her breasts, pulling down her shorts, exposing her

18   naked pubic area to the camera and masturbating.

19             On July 12, 2015, you shared an image of an adult

20   male holding a child's head back and repeatedly inserting

21   his penis into her mouth.

22             On December 29, 2015, you shared a video or an

23   image of a 10- to 12-year-old girl, sitting naked in a chair

24   and masturbating.

25             On January 6, 2016, you shared an image of a

*USA v. Muzio — 17—CR—37*

1  12-year-old girl naked, kneeling on the ground in front of

2  an adult male with his penis exposed.

3          On January 19, 2016, you shared an image of a

4  14-year-old girl being coerced to insert an object into her

5  vagina.

6          On May 3, 2016, a search warrant was executed in

7  your home and agents found approximately 400 video files

8  depicting child pornography, including an image where an

9  adult male was inserting his penis into the vagina of a 10-

10  to 12-year-old girl while she cried in pain.

11          The letters that I received from your family

12  members and friends indicate that you were a good person, a

13  good father, that you were a baseball coach, that you did

14  good things in the community.  But I'm afraid that many,

15  many people did not know about the life that you were

16  leading in the privacy of your computer and your iPhone.

17          The children that you compelled to send vile and

18  pornographic images of themselves to you have to live with

19  this forever.  Children do stupid things and they're never

20  going to be able to forget what they did.  The children that

21  you were viewing on your devices, who were being raped, were

22  real, they're not fake, they're not characters.  They will

23  live with that forever.  And actually, by sharing it with

24  other individuals, who are perverse like you, those images

25  will live on forever, Mr. Muzio; even when those children

1   die, those images will still be on the internet.

2          These are the things that I am sentencing you for

3   today.

4          One of the victims who has been identified has

5   indicated that she's lost emotional trust of men, that it's

6   affected her ability to have healthy and happy

7   relationships, that she struggles with Post-Traumatic Stress

8   Disorder, that she doesn't want to be touched, that she's

9   had numerous counseling sessions and she still suffers.  She

10  suffers from issues of judgment.  And who would ever doubt

11  that?

12         When I review this case in its entirety, it's just

13  an egregious case, it's very, very difficult, even for

14  someone who's a Judge to discuss these things.

15         As I said previously, I reviewed and considered

16  all pertinent information, including, but not limited to,

17  the presentence investigation report, the addendum, the plea

18  agreement, the submissions by counsel, the 2018 edition of

19  the Sentencing Guidelines manual and the factors outlined in

20  18, United States Code, Section 3553(a).

21         I adopt the factual information and the guideline

22  applications contained in the presentence investigation

23  report.

24         I also carefully reviewed all of the letters that

25  I received in support of Mr. Muzio, and also a letter from

*USA v. Muzio - 17-CR-37*

1    the family whose daughter was surreptitiously taped by you,

2    Mr. Muzio, as she traveled to and from school.  I also

3    reviewed the photographs that support Counts 1 and 2 of the

4    superseding indictment.

5              I find the total offense level is 43, the criminal

6    history category is I, and the guideline imprisonment range

7    is life, or 6,000 months, which happens to be 500 years.

8    Counts 1 and 2 each have 15-year statutory minimum

9    sentences, Counts 3 through 8 each have 5-year statutory

10   minimums and Count 9 has no statutory minimum.

11             After reviewing all of the facts in this case, the

12   Court will impose a non-guideline sentence.  In doing so,

13   the Court notes that the guideline range, although

14   appropriately calculated, calls for a sentence of 6,000

15   months.  The Court finds this is greater than necessary to

16   meet the goals of sentencing outlined in 18, United States

17   Code, Section 3553(a).  However, in order for the sentence

18   to reflect the seriousness of the offense, promote respect

19   for the law and to provide just punishment for the offense,

20   afford adequate deterrence to criminal conduct and to

21   protect the public from further crimes of the defendant, the

22   Court determines that a lengthy term of imprisonment is

23   necessary to meet the goals of sentencing as noted above.

24             In determining the proper sentence, I have

25   considered the fact, as I said earlier, that the defendant

*USA v. Muzio - 17-CR-37*

1   portrayed himself as a stay-at-home father, actively

2   involved in his children's lives and activities at a time

3   when he committed this offense.  Meanwhile, he was acting as

4   an online sexual predator, posing as a teenage boy and

5   inducing approximately 15 children, minor females, to become

6   nude and/or engage in sexually explicit activity for the

7   purpose of producing videos and still images of themselves

8   to send to him.  The defendant used these depictions for

9   sexual gratification.  There was also evidence uncovered of

10  the defendant trading user names, images and videos of some

11  of the females he had induced to produce nude and/or

12  pornographic images and videos of themselves.  He also

13  distributed child pornography over a file sharing network,

14  which is how his conduct was initially detected.

15          The defendant not only acted as an online sexual

16  predator, he perpetrated the online child pornography

17  epidemic by distributing nude and pornographic images and

18  videos of minor females who he induced to at least one

19  other -- to whom he introduced to at least one other

20  individual.  He also shared the female's social media user

21  names with the individual so he could also attempt to induce

22  the minors to produce further sexually explicit material of

23  themselves.

24          Although not a criminal offense, Muzio also

25  videotaped and photographed his neighbor's young minor

1   daughter over a number of years, zooming in on her buttocks

2   and chest as she innocently walked to and from school, her

3   home and her car.  This conduct was not uncovered until the

4   videos and photos of her were discovered during the forensic

5   examination after the defendant's arrest for the instant

6   offense.  This conduct demonstrates that the defendant poses

7   a risk not only to minors online but to minors in the

8   community as well.

9          I have considered the defendant's history,

10  including his family circumstances, and apparent history of

11  mental health issues.  But I note for the record that even

12  with the mental health issues that the defendant says that

13  he has, and even knowing that he does carry a diagnosis,

14  according to the family letters that I received, he was

15  carrying on with his life, coaching, being attentive to

16  family, being attentive to his parents.  I mean, yes, he

17  carries a diagnosis of anxiety and a history of post -- of

18  some obsessive compulsive and I think Post-Traumatic Stress,

19  but he was carrying on with his life, by all accounts, and

20  that's obvious to me in the letters that I received from the

21  family members.  But I do consider that he has a history of

22  mental health issues.  I don't reject that, I accept it.

23         However, based upon the number of victims in this

24  case, both charged and uncharged, and the additional minor

25  females whom the defendant victimized even not to the extent

*USA v. Muzio - 17-CR-37*

1   that his conduct would constitute a federal offense, the

2   Court finds the only reason to impose a non-guideline

3   sentence in this case is the fact that the guideline range

4   calls for a sentence of 500 years.  The Court does not find

5   any other mitigating factors which would warrant a sentence

6   outside of the guideline range.

7          I also note that after his arrest, the defendant

8   in this case indicated that he had been sexually abused, but

9   there was never any reporting of that until after the arrest

10  for the instant offense, as far as I can see from all of the

11  records that are in front of me.

12         Furthermore, the Court finds that regardless of

13  any potential miscalculations in the Guidelines scoring in

14  this case, I would have imposed the same sentence as I

15  believe it is sufficient but not greater than necessary to

16  meet the goals of sentencing outlined in 18, United States

17  Code, Section 3553(a).  And again, I think that the sentence

18  that I will impose this afternoon complies with the 3553(a)

19  standards in that it needs to reflect the seriousness of the

20  offense, and this offense was egregiously serious; it needs

21  to promote respect for the law; it needs to deter further

22  criminal conduct; and it most definitely needs to protect

23  the public from further crimes from this predator.

24         Please stand for your sentence, Mr. Muzio.

25         Upon your plea of guilty on Counts 1, 2, 3, 4, 5,

1    6, 7, 8 and 9 of the superseding indictment, it is the

2    judgment of the Court that you are committed to the custody

3    of the Bureau of Prisons for a period of 180 months on

4    Count 1, 180 months on Count 2 and 60 months on Count 3,

5    counts to run consecutively to each other, and 60 months on

6    each of Counts 4 through 9, counts to run concurrently to

7    each other and to Counts 1 through 3, for a total term of

8    imprisonment of 420 months.  Again, the total term of

9    imprisonment is 420 months.

10            I recommend that the defendant participate in sex

11   offender treatment with the Bureau of Prisons.

12            Upon your release from imprisonment, you will be

13   placed on supervised release for a term of life on each of

14   Counts 1 through 9, the terms to run concurrently.

15            I have a number of conditions that I must go over,

16   conditions that will be placed on your supervised release,

17   and you may both be seated as I do this because they are

18   lengthy.

19            While on supervised release, you shall not commit

20   another federal, state or local crime and you shall comply

21   with the standard conditions that have been adopted by this

22   Court, as well as the following special conditions, which I

23   find are necessary and justified in this case based upon the

24   nature of the instant offense, as well as your history and

25   characteristics as the defendant, as outlined in detail in

*USA v. Muzio - 17-CR-37*

1   the presentence report and to promote rehabilitation of the

2   defendant:

3           You shall contribute to the cost of any

4   evaluation, testing, treatment and/or monitoring services

5   rendered in an amount to be determined by the Probation

6   Officer based on your ability to pay and the availability of

7   third-party payments.

8           You shall not have any direct contact with any

9   child you know or reasonably know to be under the age of 18,

10  including your own children, without the permission of the

11  Probation Officer.  If you do have any direct contact with

12  any child you know or reasonably should know to be under the

13  age of 18, including your own children, without the

14  permission of the Probation Officer, you shall report this

15  contact to the Probation Officer within 24 hours.  Now, I

16  have no evidence that you were a predator with your own

17  children, but in light of the breadth and scope of what you

18  have done, I am placing this condition upon you.  Direct

19  contact includes written communication, electronic

20  communication, in-person communication or physical contact.

21  Direct contact does not include incidental contact during

22  ordinary daily activities in public places.

23          You shall not go to or remain at any place where

24  you know children under the age of 18 are likely to be,

25  including parks, schools, playgrounds, child care

*USA v. Muzio - 17-CR-37*

1  facilities, without the permission of the Probation Officer.

2  Again, this is because you have preyed on innocent children.

3        You shall not communicate or otherwise interact

4  with the following individuals:  Victim 1, Victim 2,

5  Victims 3 through 5, Victims 6 through 13.

6        You shall undergo a psychosexual evaluation and,

7  if recommended by the evaluator, you shall participate in a

8  mental health treatment program, which may include, but will

9  not be limited to, participation in sex offense specific

10 treatment.  The Probation Office must approve the location,

11 frequency and duration of treatment.  You must abide by the

12 rules of the program.

13       Your supervision may include examination using a

14 polygraph, computerized voice stress analyzer or other

15 similar device to obtain information necessary for

16 supervision, case monitoring and treatment.  You shall

17 answer the questions posed during the examination subject to

18 your right to challenge in a court of law the use of such

19 statements as violations of your Fifth Amendment rights.  In

20 this regard, you shall be deemed to have not waived your

21 Fifth Amendment rights.  The result of any examinations

22 shall be disclosed to the U.S. Probation Office and the

23 Court, but shall not be further disclosed without the

24 approval of the Court.

25       You shall not use or possess any computer data

1    storage device or internet capable device unless you

2    participate in the Computer and Internet Monitoring Program

3    or unless authorized by the Court or the U.S. Probation

4    Office.  If placed in the program, you will comply with all

5    of the rules of the program and pay the costs associated

6    with the program.  The U.S. Probation Office may use and/or

7    install any hardware or software system that is needed to

8    monitor your use of a computer or internet capable device.

9    You shall permit the U.S. Probation Office to conduct

10   periodic unannounced examinations of any computer equipment,

11   including any storage device, internet capable device you

12   use or possess.  This equipment may be removed by the U.S.

13   Probation Office or their designee for a more thorough exam.

14   You may be limited to possessing one personal internet

15   capable device to facilitate the U.S. Probation Office's

16   ability to effectively monitor your internet related

17   activity.

18          If your employment requires the use of a computer,

19   you may use a computer as long as you tell your employer

20   what the nature of your conviction is and the fact that your

21   conviction was facilitated by the use of a computer.  The

22   Probation Office must confirm your compliance with this

23   notification.

24          While in treatment and for the remainder of

25   supervision following completion of treatment, you shall not

1  view, possess, own, subscribe to or purchase any material,

2  including pictures, videotapes, films, magazines, books,

3  telephone services, electronic media, computer programs or

4  computer services that depict sexually explicit conduct as

5  defined in 18, United States Code, Section 2256(2).

6          The reason for the ban on pornography is that your

7  predatory nature is such that there is a concern that

8  viewing any pornography will lead you, in my view, to

9  further predatory behaviors.

10          You shall participate in a program for substance

11  abuse, which shall include testing for the use of controlled

12  substances, controlled substance analogues and alcohol.  The

13  reason for this condition is that you do have a history, as

14  noted in the presentence investigation report, of substance

15  abuse, including abuse of alcohol, where you indicate that

16  you were drinking a full bottle of alcohol several times a

17  week.  This may include outpatient treatment as recommended

18  by the treatment provider based upon your risk and needs.

19  You may also be required to participate in inpatient

20  treatment upon recommendation of a treatment provider and

21  upon approval of the Court.  The Probation Office shall

22  approve the location, frequency and duration of outpatient

23  treatment.  You shall abide by the rules of any treatment

24  program, which may include abstaining from alcohol.  You

25  shall contribute to the cost of any evaluation and/or

*USA v. Muzio - 17-CR-37*

1   treatment in an amount to be determined by the Probation

2   Officer based on your ability to pay and the availability of

3   third-party payments.

4          You must participate in a mental health program,

5   which may include medical, psychological or psychiatric

6   evaluation and outpatient treatment as recommended by the

7   treatment provider based upon your risk and needs.  You may

8   also be required to participate in inpatient treatment based

9   upon the recommendation of a treatment provider and upon

10  approval of the Court.  The Probation Office shall approve

11  the location, frequency and duration of outpatient

12  treatment.  You must abide by the rules of the program,

13  which may include taking medicine.  You shall contribute to

14  the cost of any evaluation and/or treatment in an amount to

15  be determined by the Probation Officer based on your ability

16  to pay and the availability of third-party payments.

17         Based upon your past history of substance abuse

18  and for the purpose of substance abuse treatment

19  programming, you shall remain -- you shall refrain from the

20  use of alcohol and be subject to alcohol testing and

21  treatment while under supervision.

22         I don't have any psychological reports that, you

23  know, would tell me what the risk is for you reoffending,

24  Mr. Muzio, but your conduct was pervasive and ongoing, and

25  when I reference over 2,000 discussions with Victim 1 and

*USA v. Muzio - 17-CR-37*

1  over 4,000 discussions with Victim 2, that certainly leads

2  me to be concerned about the pervasive nature of your

3  activities and just common sense, although I cannot say to

4  any degree of certainty, if, when you get out of prison,

5  you're going to reoffend, I do not have any expert proof in

6  that regard.  It's just that what you did went over a

7  significant period of time and it was relentless and it was

8  nationwide and it was even outside of the United States.

9        I find that based on your financial resources, as

10  well as your financial obligations, that you do have the

11  ability to pay restitution.  Now, I will note for the record

12  that counsel for one of the victims, I believe in the

13  "Chelsea" series, has requested restitution in the amount of

14  $10,000.  In that application for restitution, the attorney

15  states that they have done a *Paroline* calculation.  I

16  carefully reviewed those submissions by counsel and I do not

17  find a computation consistent with the *Paroline* case.  I

18  find that the attorney cites awareness of the *Paroline* case

19  and then just states, "According to *Paroline*, we ask for

20  $10,000."  That's not how I award restitution.  Under

21  *Paroline*, a trial court is supposed to take into account the

22  amount of the general losses and divide that amount by the

23  number of restitution orders already entered into in other

24  cases and with other defendants, and then the defendant

25  before the Court is supposed to pay his evenly-apportioned

*USA v. Muzio — 17-CR-37*

1    share.

2            I will allow counsel for the victim seeking

3    restitution to amend that request within 30 days from today

4    so that it truly meets the *Paroline* standards and then I

5    will issue a separate decision on restitution.

6            I find that based on your financial resources, as

7    well as your financial obligations, that you do not have the

8    ability to pay a fine or the additional special assessment

9    outlined in 18, United States Code, Section 3014.  However,

10   you must pay to the Clerk of the Court a special assessment

11   of $900, which is due and payable immediately.

12           You must consent to an entry of forfeiture to the

13   items outlined in the preliminary order of forfeiture.

14           Just a couple other things that I want to put on

15   the record.

16           I know, Mr. Kindlon, you asked me to take into

17   consideration the fact that the defendant apparently did not

18   commit any other offenses while he was on supervised

19   release, but I have to tell you that that provides me with

20   little solace in terms of fashioning a sentence that I think

21   is appropriate and reasonable.  Most defendants, many

22   defendants know the severe consequences that they will face

23   if they violate the law again while they're on supervised

24   release, and I don't see that quite the way that you see it,

25   as a factor that would cause me to substantially vary from

*USA v. Muzio — 17-CR-37*

1  the Guidelines.  But I recognize your argument, but I simply

2  just don't agree with you on that.

3          This year and last year, I sentenced an individual

4  for production and possession of child pornography, that was

5  a case involving a defendant with the last name of Sawyer.

6  That case went to the Second Circuit twice.  In the final

7  decision from the Second Circuit, the Second Circuit stated

8  that the sentence that I imposed in that case, which was, I

9  believe, 30 years, it was characterized this way, quoting

10  from *Sawyer*:  "The sentence is barbaric, without being all

11  that unusual."

12          I have to say that what I found barbaric in the

13  *Sawyer* case was what Mr. Sawyer did to two young children.

14  And what I find barbaric in this case is what Mr. Muzio did

15  to innocent children.  Children are supposed to be able to

16  lead their lives without being subjected to this kind of

17  evil.  Children are the people in society that we are

18  supposed to protect above all others.  The barbarism for me

19  is what was done to these children and the way it was done.

20  I mean, we wish that we could protect all children from this

21  type of evil, but, obviously, we can't.  And the sentence

22  that I imposed today, in my judgment, is a sentence that

23  takes into account all of the 3553(a) factors, it's a

24  sentence that I have tailored specifically to this

25  defendant, having read his electronic conversations with not

*USA v. Muzio - 17-CR-37*

1   just the two victims in Counts 1 and 2, but all of the other

2   victims who were not included in that count.  It's a

3   sentence imposed on a man that would go so far as to tell

4   his victims that he loved them, that he would marry them,

5   that he himself had cancer; it's specific to this case.

6           Whether or not Mr. Muzio will reoffend when he

7   finishes this period of incarceration, I don't know.

8           Both parties have the right to appeal this

9   sentence in certain limited circumstances, except as

10  restricted by any waivers stipulated in the plea agreement.

11  You are advised to consult with your attorney to determine

12  whether or not an appeal is warranted.  Any appeal must be

13  filed within 14 days of the date judgment is filed in this

14  case.  I note for the record that the defendant waived his

15  right to appeal any sentence of 365 months or less in this

16  case.

17          Is there anything further from the Government?

18          MR. O'HANLON:  No, your Honor.

19          THE COURT:  Is there anything further from the

20  defense?

21          MR. KINDLON:  No, your Honor.

22          THE COURT:  The defendant is remanded.  Court

23  stands adjourned.

24                  (This matter adjourned at 1:28 PM.)

25                       - - - - -

1                    CERTIFICATION OF OFFICIAL REPORTER

2

3

4            I, THERESA J. CASAL, RPR, CRR, CSR, Official

5    Realtime Court Reporter, in and for the United States

6    District Court for the Northern District of New York, do

7    hereby certify that pursuant to Section 753, Title 28,

8    United States Code, that the foregoing is a true and correct

9    transcript of the stenographically reported proceedings held

10   in the above-entitled matter and that the transcript page

11   format is in conformance with the regulations of the

12   Judicial Conference of the United States.

13

14           Dated this 3rd day of January, 2019.

15

16   **/s/ THERESA J. CASAL**

17           THERESA J. CASAL, RPR, CRR, CSR

18           FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*